IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| S.K., INDIVIDUALLY, AND AS NEXT FRIEND ON BEHALF OF N. S., minor<br>    Plaintiffs,<br><br>    v.<br><br>MISSOURI CHARTER PUBLIC SCHOOL ASSN.<br>Serve: ℅ Ms. Kirsten Lipari-Braman<br>    1306 Papin St.<br>    St. Louis, MO 63103<br><br>Kairos BOARD OF EDUCATION<br>Serve: ℅ Mr. Hugh Eastwood<br>    2315 Miami St.<br>    St. Louis, MO 63118<br><br>Kairos: ST. LOUIS<br>Serve: ℅ Mr. Gavin Schiffries<br>    2315 Miami St.<br>    St. Louis, MO 63118<br><br>JACK KREWSON, JULIA LARIMORE, DOES 1-3,<br>SCOTT CISNEROS,  LEE ROHRER,<br>GAVIN SCHIFFRIES, NILESH PATEL, and<br>KAT LUCIDO, individually,<br>Serve: ℅ Mr. Gavin Schiffries<br>    2315 Miami St.<br>    St. Louis, MO 63118<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION  NO. 4:22-CV-363<br>)<br>) <u>COMPLAINT</u><br>) <u>JURY TRIAL DEMAND</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

<u>COMPLAINT AND JURY TRIAL DEMAND</u>

COMES NOW, Plaintiffs, S.K., individually and as Next Friend on behalf of N. S., a

minor, by and through undersigned counsel, and for this Complaint against Defendants Missouri

Charter Public Schools, Kairos Board of Education, Hugh Eastwood, CEO and Superintendent,

in his official and individual capacities, Kairos Academies: St. Louis, Krewson Jack Krewson, in his official and individual capacities, Julia Larimore, Does 1-3, Scott Cisneros, Lee Rohrer, Gavin Schiffries, Nilesh Patel, and Kat Lucido, each individually and jointly, and states the following:

INTRODUCTION

1.   This civil rights lawsuit arises from the physical and emotional abuse and neglect of numerous middle school age children at a public charter school in Saint Louis City, Missouri. This abuse was perpetuated by multiple teachers, staff and administrators who documented the abuse on school computers and other electronic devices, as well as on paper.  This lawsuit is brought on behalf of a 14-year-old victim of this abuse seeking damages against the Missouri Charter Public School Association, Kairos Board of Education, Board President and school Superintendent, Kairos: St. Louis, the school's Krewson, and the individuals whose abuse was made possible by their paid positions at the school.

2.   This suit is brought to remedy Defendant's failure to provide a Free Appropriate Public Education and direct participation in discrimination, bullying, harassment, and retaliation of N. S, and S.K. based on race and disability, which resulted in hospitalization and extreme emotional distress.

JURISDICTION AND VENUE

3.   This action arises under the the Fourteenth Amendment to the Constitution of the United States Section I; Title VI of the Civil Rights Act of 1983, 42 U.S.C §§ 1983 and 2000d *et. seq.*; Title II of the Americans with Disabilities Act of 2010, 28 CFR 35 *et. seq.*; Individuals with Disabilities Education Act of 2004, 20 U.S.C. § 1411; 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 701, as hereinafter more fully appears. Both race and disability are protected classes

covered by federal law claims that prohibit retaliation thereby making this complaint subject to this Court's jurisdiction and subject matter jurisdiction under 28 U.S.C § 1331.

4.  Venue is proper under 28 U.S.C. § 1391, because the events giving rise to this action occurred in the judicial district of the Eastern District of Missouri.

<u>THE PARTIES</u>

5.  Plaintiff S.K. ("Plaintiff" or "Mother") is an adult citizen of the State of Missouri who resides St. Louis, Missouri. Mother sues in her individual capacity and as next friend on behalf of N.S., a minor.

6.  Plaintiff N.S. ("Plaintiff" or "Student" or "Son") is a fourteen year African American student with disabilities and is a resident of the State of Missouri.

7.  Defendant Missouri Charter Public School Association ("Defendant" or "MCPSA") constitutes the governing body for the Kairos Board of Education. MCPSA's Krewson office is located at 1306 Papin St., St. Louis, Missouri 63103. MCPSA is a corporate body created by RSMo. § 351.055(2004). At all times mentioned Kairos was an agent of Defendant MCPSA in its capacity as governing body of Kairos Board of Education.

8.  Defendant Kairos Board of Education ("Defendant" or "Board") constitutes the governing body for Kairos Charter School. The Board's Krewson office is located at 2315 Miami St., St. Louis, Missouri 63118. Board is a corporate body created by RSMo. §351.055(2004).  At all times mentioned, Mr. Hugh Eastwood was an agent of Board acting in his official capacity as Board President.

9.  Defendant Hugh Eastwood ("Defendant" or "Eastwood") is an adult citizen of the State

of Missouri, and he currently serves as the Board President. Plaintiffs are suing Eastwood in his official and individual capacities. At all times mentioned, Eastwood was then an agent of Board serving as President and Kairos Superintendent.

10. Defendant Kairos Academies: St. Louis ("Defendant" or "Kairos") is a public charter school in the State of Missouri. Kairos' Krewson office is located at 2315 Miami St., St. Louis, MO 63118. Kairos is a corporate body created by RSMo. § 351.055(2004). At all times mentioned, Mr. Jack Krewson was an agent of Defendant's board serving as Krewson of Kairos.

11. There exist, and at all times herein mentioned there existed, a unity of interest and ownership between Defendants Board and Kairos, such that any individuality and separateness between the corporate Defendants have ceased, and they are each an alter ego of the other, in that Defendant Kairos is completely controlled, dominated, managed and operated by Defendant Board as the Defendants all share the same board members and corporate officers.

12. Defendant Jack Krewson ("Defendant" or "Krewson") is an adult citizen of the State of Missouri, and he currently serves as the Chief Strategy Officer of Kairos. Plaintiffs are suing Mr. Krewson in his official and individual capacities. At all times mentioned, Mr. Krewson was then an agent of Defendant Board serving as Krewson of Kairos.

13. Plaintiff is unaware of the true names and capacities of those Defendants sued herein as Does 1-3, and therefore, sue said Defendants in such fictitious names. Plaintiff is informed and believes, and thereupon alleges, that each of these Defendants designated herein as a Doe, was and is legally, equitably, or in some other actionable manner, responsible for the events and happenings hereinafter referred to, and thereby negligently, carelessly, with deliberate indifference, or by reason of direct or imputed negligence or vicarious fault or breach of duty arising out of the matters herein alleged, legally and proximately caused the hereinafter alleged

injuries and damages to the Plaintiff. Plaintiffs will hereafter seek leave to amend this Complaint to set forth the true names and identities of the unknown named Doe Defendants when they are ascertained.

14. Defendant Julia Larimore ("Defendant" or "Larimore") is an adult citizen of the State of Missouri, and formerly served as Director of Restorative Justice at Kairos. Plaintiffs are suing Larimore in her individual capacity. At all times mentioned Larimore was an agent of Defendant Board as Director of Restorative Justice at Kairos.

15. Defendant Scott Cisneros ("Defendant" or "Cisneros") is an adult citizen of the State of Missouri, and he currently serves as Instructional Director at Kairos. Plaintiffs are suing Cisneros in his individual capacity. At all times mentioned, Cisneros was an agent of Defendant Board as an employee of Kairos.

16. Defendant Lee Rohrer ("Defendant" or "Rohrer") is an adult citizen of the State of Missouri, and she formerly served as the Hierarchical Academic Officer at Kairos. Plaintiffs are suing Rohrer in her individual capacity. At all times mentioned, Rohrer was an agent of Defendant Board as Hierarchical Academic Officer for Kairos.

17. Defendant Gavin Schiffries ("Defendant" or "Schiffries") is an adult citizen of the State of Missouri, and he currently serves as Chief Executive Officer at Kairos. Plaintiffs are suing Schiffries in his individual capacity. At all times mentioned, Schiffries was an agent of Defendant Board as an employee of Kairos.

18. Defendant Nilesh Patel ("Defendant" or "Patel") is an adult citizen of the State of Missouri, and he currently serves as School Management Support at Kairos. Plaintiffs are suing Patel in his individual capacity. At all times mentioned, Patel was an agent of Defendant Board as an employee of Kairos.

19. Defendant Kat Lucido ("Defendant" or "Lucido") is an adult citizen of the State of Missouri, and she currently serves as the Neurodiversity Director at Kairos. Plaintiffs are suing Lucido in her individual capacities. At all times mentioned, Lucido was an agent of Defendant Board as an employee of Kairos.

20. Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, each of the defendants sued herein was the agent, alter ego, servant, employee, successor-in-interest and or joint venturer of each of the other defendants and words, as such, acting within the time, place, purpose, scope, and authority of state agency, service, employment, successor in interest and/or joint venture and that each and every defendant aforesaid, when acting as a Krewson, was negligent in the selection, hiring, training and or supervision of each and every other defendant as an agent, servant, employee, successor in interest and or joint venture.

21. On information and belief, a policy or policies of insurance provide coverage for Missouri charter schools for the acts and omissions alleged herein.

22. On information and belief a policy or policies of insurance provide coverage for Kairos Board of Education for the acts and omissions alleged herein.

23. On information and belief, a policy or policies of insurance provide coverage for Kairos for the acts and omissions alleged herein.

24. On information and beliefs, a policy or policies of insurance provide coverage for Eastwood for the acts and omissions alleged herein.

25. On information and belief, a policy or policies of insurance provide coverage for Krewson for acts and omissions alleged herein.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

26. Plaintiff N.S. ("Plaintiff" or "Student" or "Son") was at the time, a twelve year old African American, male citizen of St. Louis, Missouri. During all times relevant to the allegations herein, Plaintiff was a minor enrolled as a sixth grade student at Kairos located at 2315 Miami St., St. Louis, Missouri 63118. N.S. is represented in this lawsuit by Next of Friend, S.K. ("Mother").

27. The school was then led by Krewson. Krewson was a policy maker at Kairos and had the ability to implement policy, control who was present in the school, control school grounds, and had a duty to monitor and supervise staff members, employees, and others who worked and or were present on school property for education purposes, including Julia Larimore, Does 1-3, Scott Cisneros, Lee Rohrer, Gavin Schiffries, Nilesh Patel, and Kat Lucido.

28. From approximately August 1, 2019 to March 30, 2020, various named Defendants were paid employees for Kairos.

29. As employees at the school, each individual was responsible for the care, supervision, and safety of the students, including N.S.

30. Plaintiffs allege Kairos intentionally discriminated against N.S., S.K., and other similarly situated students and parents based on race, disability, and retaliation.

31. N.S. was diagnosed with Attention Deficient Hyperactivity Disorder (ADHD), Obsessive Defiance Disorder (ODD), and Post Traumatic Stress Disorder (PTSD), which are all classified as a disability under the category Other Health Impairment and/or Emotional/Behavioral Disturbance.

32. N.S. has been on an Individualized Education Plan (IEP) since third grade, with the most recent update in December 2021.

33. In or about May 2019, when applying to enroll her son into Kairos, Mother provided

Krewson with a copy of N.S.'s IEP, dated January 24, 2019.

34. N.S. began sixth grade at Kairos in August 2019.

35. N.S.'s IEP was later returned to Mother's porch in October 2019, with no direct contact or discussion regarding how Defendants intended to implement special education resources, activities and programs.

36. N.S.'s IEP was approved for 200 hours per week, but remained unmet throughout the duration of the school year.

37. Defendants began retaliatory acts towards N.S. and Mother after Mother began fervently advocating for her Student with Disabilities.

38.  On or about September 16, 2019, Mother sent a text message to Larimore, requesting a dress code exception for N.S.'s birthday, in which he would wear a t-shirt that memorialized his deceased father as he had done annually.

39. Larimore, fully aware that N.S. had just suffered the loss of his father, two school-aged friends to gun violence as well as the recent passing of an aunt and uncle, failed to take the request seriously and failed to inform the staff of Mother's request.

40. Larimore owed a special duty to N.S. to protect him from foreseeable risks while enrolled at Kairos, due to the nature of his trauma-related disabilities.

41. On N.S.'s birthday, N.S. wore the special occasion t-shirt to school. Cisneros demanded N.S. remove the t-shirt. N.S. attempted to explain that Mother requested an exception, but was interrupted and harassed.

42. Cisneros embarrassed N.S. and called him a liar while threatening to assault the child by taking the shirt off the child himself if N.S. didn't remove it.

43. Cisneros owed a special duty to N.S. to protect him from foreseeable risks while enrolled

at Kairos, due to the nature of Student's trauma-related disabilities.

44. Cisneros failed to protect N.S., by threatening and harassing or causing to be threatened or harassed, causing N.S. extreme emotional distress.

45. In the absence of a duty to protect N.S., Defendants created the harm that caused N.S.'s injuries, thereby creating the duty to protect.

46. Defendants caused N.S. to become distraught, triggering his Post-Traumatic Stress Disorder (PTSD), causing extreme emotional distress as he removed the shirt and gave it to Cisneros, who balled it up, placed it into a trash bag and stored it in a closet until Mother picked it up.

47. Larimore failed to protect N.S. from being triggered by other staff foreseeably enforcing the dress code.

48. Mother expressed her disdain directly to Larimore in a text message, before filing a complaint about Cisneros with Krewson on September 18, 2019.

49. In or about September 2019, Mother was on the phone with Rohrer during the s hood day. N.S. went to use the bathroom. Mother overheard Rohrer enter the same bathroom without announcing herself.

50. Becoming startled and fearful, N.S. urinated on himself.

51. Mother heard N.S. yell out, "stop grabbing me!" Rohrer pushed N.S., attempting to grab the cell phone from N.S.'s hands. Both Mother and N.S. suffered extreme emotional distress as a result.

52. Mother reported the incident to Krewson.

53. Mother asked Krewson to review the camera footage in that location. He agreed, but has failed to ever follow up with Mother.

54. In or about October 2019, Mother witnessed a student hall monitor bullying N.S. exclaiming she wished he would go "back to Africa!"

55. Mother reported the student's comment to a teacher nearby, Doe 1, but Doe 1 refrained from interjecting.

56. Mother addressed the hall monitor directly, educating her about racism and insensitive comments. The child insisted on expressing her disdain about black students in the school.

57. Mother immediately reported the incident to Krewson.

58. On a separate occasion, Mother observed and intercepted a similarly situated student being verbally aggressed by Larimore, which was also reported to Krewson.

59. N.S. spent a significantly large amount of non-instructional time in a secluded setting, writing In-school Suspension Reports (ISR) between August and December 2019.

60. In addition, N.S. also spent a significant amount of non-instructional time being punished in focus lunch.

61. Focus lunch is a punitive consequence used by Defendants to discipline students.

62. Focus lunch is described by N.S. as a dark, isolated, place with locked doors and the lights out.

63. During Focus lunch, N.S. was assigned recalibration packets, which did not include any relevant instruction or assignments that follow Corporate Defendant's curriculum.

64. After observing the ratio of black students in focus lunch, Mother asked Krewson about the racial disparity, to which he answered to the effect, "white kids don't get in trouble."

65. A Caucasian student used social media to threaten a black child by calling him the n-word and threatened to bring a gun to school, which triggered a physical altercation between the two students.

66. The Caucasian student was also found to have pictures of marijuana in his cell phone on campus.

67. The Caucasian student received a ten-day suspension.

68. The African American student had to write a twenty-two page ISR unrelated to Corporate Defendant's curriculum.

69. Krewson allowed the Caucasian child's parents to bring the gun on school premises to prove its authenticity, in an inappropriate attempt to diminish the significance of the threats.

70. Mother was dissatisfied with how the situation was handled by Krewson, so she called the police for fear of N.S. and other similarly situated students.

71. On or about November 13, 2019, Krewson sent Mother a text message indicating his disdain about reporting incidents to the police, discouraging making reports of wrongdoing which violates federal and state laws.

72. Although it appears the Caucasian child was punished seemingly more harshly than the African-American child, the disparity in these binary practices had a discriminatory affect.

73. On or about November 15, 2019, Larimore showed Mother a video that had been recorded using the teacher's personal cell phone. The video was of what Larimore perceived as N.S. misbehaving.

74.  Rohrer, who had also taken unauthorized video footage of N.S.

75. Mother informed both Defendants Krewson, Larimore and Rohrer that N.S. was not to be recorded on teacher's personal cell phones and instructed them not to do it again.

76. When reported to Krewson, he attempted coaxing Mother by indicating these methods were standard in the way Kairos operates. Defendants recklessly and with great disregard, violated N.S.'s privacy rights.

77. On or about December 9, 2019, N.S. arrived at school at or about 8:20 am, but was detained in the hall talking to Schiffries for approximately twenty minutes.

78. When N.S. arrived at breakfast, Patel humiliated him in front of everyone by accusing N.S. of stealing breakfast, because he was too late.

79. Mother reported the incident to Krewson.

80. Later, on or about December 9, 2019, Rohrer and Larimore were in the compass center, when N.S. overheard Rohrer state, "I wonder why all these kid's black fathers are getting killed."

81. This statement and the giggles that the two subsequently shared, was made directly in front of N.S., whose father was slain.

82. These, and other insensitive comments by Defendants continued to trigger N.S.'s PTSD causing extreme emotional distress.

83. In or about October 2019, Mother met with Krewson to discuss the insufficiency of Defendant's special education program.

84. Krewson admitted that Kairos was deficient in the special education area, reassured Mother that more specialists were being hired, and suggested that N.S. may not be a good fit for Kairos.

85. When Mother asked if Krewson was kicking N.S. out, he stated that 'they' would manage.

86. In or about October 2019, Larimore, told N.S. to "stop acting like a kid!" N.S. replied, "but I am a kid." Larimore corrected herself, "A baby!"

87. Mother addressed Larimore directly, who admitted the statement, but apologized while indicating that although she feels Student could mature more, Larimore maintained it was an inappropriate statement.

88. Mother filed a complaint with Krewson, who vehemently denied the possibility that Larimore could have made such a statement. He indicated he would investigate and follow up. He failed to do so.

89. Both Krewson and Larimore negligently failed to protect N.S. from the repeated harassment by employees of Kairos, while most often perpetuating it themselves.

90. On or about November 11, 2019, N.S. complained to Rohrer about his stomach hurting.

91. N.S. has been diagnosed with high anxiety caused by trauma. Stress causes stomach pain.

92. Rohrer forced N.S. to "sit still" until class was over.

93. That same night, Mother spent nine hours at the emergency room with N.S., who was suffering from a swollen gallbladder caused by stress.

94. Defendants knew or should have known of Plaintiff's disabilities and negligently failed to regard student's medical needs.

95. Rohrer and Krewson were aware that N.S. was engaged in trauma-informed therapy work with a counselor at the Gene Slay after-school program.

96. Gene Slay is a Boys and Girls Club partner with various St. Louis schools, including Kairos to provide additional emotional and academic support, as well as extracurricular activities.

97. This program is also available to nondisabled peers.

98. N.S. applied and was accepted into the Gene Slay program and was scheduled to attend on multiple occasions to aid N.S. with disability-related needs, but was denied access as punishment for behaviors associated with his disabilities that hindered his success as a student.

99. N.S. was being punished according to the Kairos Compass Matrix for Kairos Academies

for behaviors associated with his disabilities with no reasonable and appropriate modification in violation of federal and state law.

100.    Defendants Kairos, Krewson, Lucido, along with other employees misrepresented its and their ability to provide a Free Appropriate Public Education (FAPE) to N.S. and other similarly situated students.

101.    Mother and other similarly situated parents and guardians are being denied rights under Individuals with Disabilities Education Act (IDEA).

102.    Mother's written communications about school related discipline and academics often go unanswered and remain uninvestigated. There is rarely follow up.

103.    Mother was denied meaningful participation in developing her son's IEP. On or about November 22, 2019, Lucido submitted her initial IEP assessment to N.S.'s medical provider.

104.    On or about December 9, 2019, Rohrer engaged in a virtual thread with Patel, ridiculing N.S. for the excessive number of essays she had assigned to him.

105.     N.S. saw the thread, took a screenshot of it with his cellular phone, became very emotionally distressed and began to act out, refusing to engage Rohrer.

106.    Within hours, Krewson called to inform Mother that Larimore had become frustrated with N.S., because he refused to do schoolwork.

107.    Larimore balled up her fist in N.S.'s face and walked away.

108.    As a result, Krewson suspended N.S. for twenty-six minutes at the end of the day, for egregious behavior, before extending the suspension to three days, leading into the holiday break.

109.    Refusing to work is one of many resulting effects of N.S.'s disability.

110.     Defendants lack integrity in dealing with students and parents. On multiple occasions, parents have conferred with one another about school incidents, where multiple defendants have been found lying on students to parents in relation to incidents on school campus.

111.     N.S. also has a disability that causes him to need regular bathroom breaks.

112.     Schiffries denied N.S. bathroom breaks causing him to have accidents in his clothes and sending him home soiled.

113.     Schiffries told N.S. that he was sick of him and his behaviors. These are abusive behaviors at best and violated the rights of N.S. and Mother.

114.     After four months of inaction, in further retaliation, on or about December 9, 2019, just eighteen days after her initial assessment, Lucido wrote a subsequent assessment for N.S.'s IEP. This assessment was vastly different, downplaying his disabilities and with no comments to substantiate the changes.

115.     Patel, N.S.'s life coach, described N.S. completely opposite of the previous reports from educators at his previous school.

116.     This was done willfully to hide Defendants' inability to meet the special education needs of N.S.

117.     Defendants repeatedly and negligently failed to protect N.S. from racial and disability discrimination.

118.     N.S. developed and maintained a productive relationship with Ms. Gerber, but Mr. Patel and other Defendants refused to allow him to utilize her for any positive reinforcement or resource, again only prohibiting access to her as a punitive discipline.

119.     On various dates, Krewson informed Mother that Kairos was understaffed, making it

difficult for him to answer parent concerns during business hours, also limiting face-to-face interactions.

120.    Kairos implemented a forty-eight hour notice for parents to visit the school, limiting access.

121.    Kairos employee, Doe 2, was directed to stop communicating with Mother.

122.    When Mother requested to speak to Doe 3, Krewson interrupted his own meeting with another parent to stop Doe 3 from talking to Mother, stating Doe 3 was too busy.

123.    On or about December 16, 2019 Katherine Lucido denied Mother in person attendance to her son's IEP meeting.

124.    Mother refused and canceled the IEP meeting, because she was being retaliated against for advocating for her son's education.

125.    On or about January 15, 2020, Mother met with Eastwood to file a complaint against Kairos and it's employees.

126.    Eastwood promised an investigation within thirty days.

127.    In a response to Mother's complaint, Eastwood sent a letter from Board via email on a February 17, 2020 finding that "Kairos administrators and teachers had acted in accordance with their policies" as it pertained to N.S.

128.    Mother has anxiety over her son's safety, health, and education.

129.    Mother suffers from insomnia and is on medication for her anxiety which is exacerbated by the maltreatment of her traumatized Son, who was repeatedly discriminated against by people to whom he was entrusted.

130.    Due to the lack of special education resources, the inappropriate disproportionate

discipline, and discriminatory treatment of N.S., Mother removed him from Kairos and attempted to enroll him in a public school in or about March 2020.

131.     The new school required N.S.'s transcript from Kairos in order to allow him to attend classes.

132.     Kairos refused to release N.S.'s transcript until Mother paid a thirty dollar "donation" to the school disguised as a broken computer fee. N.S. did not have a broken computer and Mother did not have thirty dollars to spare.

133.     Defendants continued to deny N.S. a FAPE, and discriminate against N.S. and Mother, by preventing his effective school transfer.

134.     Student is now enrolled in MO Virtual Academy.

## ADMINISTRATIVE REMEDIES

135.     Plaintiff free states and incorporated by reference to foregoing paragraphs of this Complaint, as if set forth in full at this point.

136.     On January 15, 2020, as a condition for bringing this lawsuit, plaintiff filed a complaint with Defendant Board.

137.     On May 12, 2020, a right to sue letter was issued to Plaintiff by the Office of Civil Rights.

## COUNT I

### Violation of 42 U.S.C. § 2000c *et. seq.*
**(Intentional discrimination based on race)**

138.     Plaintiffs sue Defendants MPCSA, Board, Kairos, Eastwood and Krewson hereinafter referred to as "Corporate Defendants" for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

139.   Title VI of the Civil Rights Act of 1983 protects people from discrimination based on race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance.

140.   Defendants, recipients of federal funds, intentionally discriminated against Plaintiffs and members of Plaintiffs' class on the basis of their race, color, or ethnicity in violation of Title VI of the Civil Rights Act of 1983, 42 U.S.C. § 2000c *et. seq.*, by employing special education and discipline policies that intentionally discriminate against African-American students, by excluding students from programs and activities and further engaging in harassment, bullying, and retaliation on the basis of race.

141.   Defendants violated numerous federal, state and school district policies and retaliated against Plaintiffs rather than protect their rights.

142.   Title VI is privately enforceable.

143.   Discrimination that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution constitutes a violation of Title VI when committed by an institution that accepts federal funds.

144.   An institution's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a particular group violates the Fourteenth Amendment and therefore violates Title VI.

145.   Defendants intentionally discriminated against or had an indifferent attitude towards African American students relying on its special education program, by failing to candidly present school's lack of properly trained special education teachers and staff.

146.   Defendants failed to include Mother in any meaningful preparation of Plaintiff's Individualized Education Plan, eventually cutting off all communications with Mother.

147.    Defendants also violated Title VI when they discriminated against Plaintiff based on disability by isolating Plaintiff and/or failing to use alternatives or least restrictive means.

148.    Mother repeatedly informed Defendants that N.S. was being harassed and bullied due to his race and disability.

149.    Plaintiff's members have been and will continue to be injured because Corporate Defendants have and will continue to deny them the opportunity to receive a FAPE free from discrimination and harassment, on the basis of race or ethnicity due to its intentionally discriminatory discipline policies and procedures.

150.    Plaintiff is entitled to a Declaratory Judgment, pursuant to 28 U.S.C. § 2201, or any permanent injunction because there is no plain, adequate, or speedy remedy at law to prevent Defendants from continuing to use discriminatory policies and procedures that discriminate on the basis of race in violation of Title VI of the Civil Rights Act of 1983 and because the harm Plaintiffs members will otherwise continue to suffer is irreparable.

151.    Plaintiffs are entitled to attorneys' fees and costs pursuant to 28 U.S.C. § 1988.

## COUNT II

### Violation of 28 CFR § 35 et. seq.
### (Disability Discrimination)

152.    Plaintiffs sue Corporate Defendants, for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

153.    Under Title II of the Americans with Disabilities Act (ADA),  people with disabilities must have an equal opportunity to participate in and benefit from state and local governments' programs, services, and activities.

154.    The ADA defines disability in three parts. A person only has to meet one of the parts

to be covered. The definition applies to a person who:

      a.  has a physical or mental impairment that substantially limits one or more major

life activities; or

      b.  has a history or record of a physical or mental impairment that substantially

limited one or more major life activities; or

      c.  is regarded as having an impairment, whether the person has the impairment or

not.

155.    Title II applies to state and local governments including school districts.

156.    Discrimination is defined as the failure to provide students with disabilities the same

opportunity to benefit from education programs, services, or activities as provided to their

non-disabled peers.

157.    Defendants racially discriminated or caused disparate treatment in administration of

discipline, although alternatives were available.

158.    Defendants discriminated against Plaintiff N.S. based on disability by using

restrictive discipline methods that exacerbated Student's disabilities, when there were less

restrictive options.

## COUNT III

### Violation of 28 CFR § 35 et. seq.
### (Failure to Provide Equal Opportunity)

159.    Plaintiffs sue Corporate Defendants, for cause, claim, damages, and hereby adopt and

incorporate by reference the allegations contained in all of the paragraphs 1-134 of this

Complaint as though set forth fully herein.

160.    Public school districts have an obligation to ensure an equal educational opportunity

to students with disabilities by providing regular or special education and related aids and services designed to meet the individual educational needs of students with disabilities as adequately as the needs of students without disabilities by providing a "free appropriate public education" (FAPE).

161.    Schools cannot exclude students with disabilities through facilities, programs, benefits, activities, or services that are provided to students without disabilities.

162.    Schools must make sure that all students receive equal access to educational opportunities.

163.    Defendants violated Student's rights by denying access to programs as punishment for behaviors attributable to student's disability.

164.    Student's behaviors are the manifestation of diagnosed conditions.

165.    Defendants failed to provide Plaintiff N.S. the same opportunity to benefit from education programs, services, or activities, such as Gene Slay trauma-based programs, as provided to non-disabled peers.

166.    Defendants failed to provide equal access to educational opportunities by secluding Plaintiff N.S. and assigning Out of School Reset (OSR) reports that provided no educational value in line with Corporate Defendants' curriculum and N.S.'s IEP.

167.    Kairos is understaffed, lacks appropriate special education specialist, and lacks special education resources that would have provided N.S. with a FAPE using the least restrictive means.

### COUNT IV

### Violation of 20 U.S.C. § 1400
### (Failure to Provide Special Education)

168.    Plaintiffs sue Corporate Defendants and Eastwood and Krewson, in their individual

capacities, for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

169.    The Individuals with Disabilities Education Act (IDEA) is an education act to provide federal financial assistance to state and local education agencies to guarantee special education and related services to eligible children with disabilities.

170.    Under IDEA, a Free, Appropriate Public Education (FAPE) is defined to mean special education and related services. Special education means specially designed instruction at no cost to the parents, to meet the unique needs of the child with a disability. Related services are provided if students require them in order to benefit from specially designed instruction.

171.    States are required to ensure the provision of full educational opportunity to all children with disabilities. IDEA requires the development of an IEP document with specific content in a required number of participants at an IEP meeting.

172.    IDEA requires written notice to parents regarding identification, evaluation, and or placement. Further, written notice must be made prior to any change in placement.

173.    A comprehensive evaluation is required. A multidisciplinary team evaluate the child, and parental consent is required before evaluation. IDEA requires that reevaluation be conducted at least every three years. For evaluation and placement decisions, IDEA requires:

   a.   that more than one single procedure or information source be used;

   b.   that information from all sources be documented and carefully considered;

   c.   that the eligibility decision be made by a group of people who know about the student, the evaluation data, and placement options; and

   d.   that the placement decision serves the student in the least restrictive environment.

174.    An IEP meeting is required before any change in placement.

175.    Defendants violated Plaintiffs rights under IDEA, thus causing injuries to Plaintiffs.

## COUNT V

### Violation of 20 U.S.C. § 1411
### (Failure to Use Least Restrictive Means)

176.    Plaintiffs sue Corporate Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

177.    Public agencies must comply with the requirement to make available a continuum of alternative placements as required under 34 CFR §§ 300.114-300.116, which includes the provision of supplementary aids and services (e.g. behavioral supports) throughout the continuum. Under 34 CFR §300.42, supplementary aids and services are defined to include aids, services, and other supports that are provided in regular education classes, other education-related settings, and in extracurricular and nonacademic settings, to enable children with disabilities to be educated with nondisabled children to the maximum extent appropriate.

178.    A failure to implement these procedural requirements or provide needed behavioral supports to a child with a disability could result in the child not receiving a meaningful educational benefit, and therefore constitute a denial of FAPE and/or a denial of placement in the "Least Restrictive Environment" (LRE) (i.e., an unduly restrictive placement).

179.    Restraint or seclusion may have a traumatic effect on a student, potentially resulting in new academic or behavioral difficulties or increased school absences resulting in a denial of FAPE. Repeated and extended periods of seclusion, moreover, may have the cumulative effect of denying the student the instructional time and related services needed to provide FAPE.

180.    Defendants often employed use of exclusionary discipline, including but not limited

to isolation, seclusion or restraint.

181.   Defendants failed to follow the procedures IDEA requires when developing, reviewing, or revising N.S.'s IEP.

182.   Defendant has failed to consider and/or provide N.S. with necessary behavioral supports when the child's behavior impeded learning of that disabled child or that of others.

183.   Defendants failed to ensure N.S.'s IEP was reasonably calculated to provide a meaningful educational benefit in the absence of behavioral supports.

184.   The Defendants did not consider the inclusion of positive behavioral interventions and supports in response to behavior that impeded N.S.'s learning or that of other similarly situated students.

185.   Defendants failed to schedule an IEP Team meeting to review N.S.'s IEP to address behavioral concerns after a reasonable request by Mother.

186.   The child's IEP has no behavioral supports or the behavioral supports in the IEP are inappropriate for the child, because Plaintiff N.S. spends much more instructional time writing OSR's about behavior than receiving meaningful educational benefits.

187.   Any behavioral supports in the child's IEP that are appropriate, are not being implemented or not being properly implemented because teachers are not trained in the classroom.

188.   Defendants have applied these practices as a routine response to disability-related needs or, worse, as punishment, resulting in violations of the civil and constitutional rights of students with disabilities including seclusion.

## COUNT VI

## Violation of 42 U.S.C. § 1983
### (Failure to Train and Supervise)

189.     Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their official and individual capacities, as well as Defendants Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido individually and under Section 1983 for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

190.     Defendants, while acting under color of state law, deprived Plaintiffs of rights under the Fourteenth Amendment of the United States Constitution and in violation of 42 U.S.C. § 1983 by failing to exercise reasonable care and diligence in the hiring, recruiting, screening, selection and monitoring of competent, properly trained personnel to work as employees who work with students with disabilities.

191.     To succeed on a Section 1983 claim, a plaintiff must establish a school district policy or custom that was the moving force behind a deprivation of rights to a child.

192.     Defendant Board established policies to train employees to work with disabled students.

193.     Defendant Board's failed to train its employees or its training practices were inadequate.

194.     Defendant Board showed a deliberate and conscious indifference to Plaintiffs' rights.

195.     The deficiency in Defendant's training caused or exacerbated Plaintiff's injuries.

196.     Defendants breached their duties by, among other things:

    a.   failing to provide properly trained and vetted special education personnel;

    b.   failing to provide Plaintiffs a viable procedure or avenue to report inappropriate and emotionally traumatizing conduct when the reporting agencies are the alleged violators;

    c.  failing to have a system or procedure to monitor behaviors resulting from disabilities or to act as any sort of intermediary between Plaintiff and Defendants; and

    d.  failing to hold accountable its employees when there were reports of misconduct towards Plaintiff.

197.    Defendants knew or should have known that its employees were unfit and/or incompetent to perform their duties and this unfitness and/or incompetence created a particular risk of harm to students in its care, including Plaintiff;

198.    As a direct and proximate result of the foregoing acts and omissions, in breach of the duties of Defendants to hire, recruit, screen, select and monitor properly trained special education personnel and create and have a viable system of reporting, Plaintiff was harmed and suffered severe emotional and psychological injuries.

## COUNT VII

### Violation of 42 USC § 1983
**(Unconstitutional Practices)**

199.    Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their individual capacities, as well as Defendants Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido individually and under Section 1983 for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

200.    Defendants' conduct, including the deprivation of constitutional rights, represents not a single, isolated, accidental, or peculiar event, but occurred in the regular procedures followed by Defendant Board and constitutes a pattern or practice of such conduct.

201.    Even prior to the dates of these incidents, Defendant Board permitted and tolerated a pattern and practice of unjustified, unreasonable behaviors by its employees.

202.    Moreover, Defendant Board failed to properly train and supervise it's educators and staff, including, but not limited to, Defendants. The failure to properly train and supervise its educators and staff demonstrates a gross disregard for the constitutional rights of the public and the Plaintiff and other similarly situated students, and was a proximate cause of Plaintiff's injuries.

203.    Defendant's gross disregard  for Plaintiff N.S. "shocks the conscience," holding each and all individually and jointly liable for acts of themselves and its employees.

204.    Based on the statewide problem of lack of resources for students with disabilities at Kairos and other public schools, before during, and after the discrimination suffered by Plaintiff, the board established customs and/or policies that failed to supervise employees from violating the constitutional rights of students. The failure to properly supervise employees demonstrates a gross disregard for the constitutional rights of Plaintiff N.S. and was a proximate cause of Plaintiff's injuries.

205.    As a proximate result of the aforesaid acts, omissions, systemic flaws, policies, and customs, Defendants deprived Plaintiffs of their rights under the Fourteenth Amendment of the United States Constitution.

## COUNT VIII

### Violation of 42 USC § 1983
**(Unconstitutional Acts)**

206.    Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their official individual capacities, as well as Defendants Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido individually and under Section 1983 for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

207.    Section 1983 of 42 U.S.C. states "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress.

208.    Section 1983 provides remedies for deprivation of rights established elsewhere in the Constitution for federal laws.  *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

209.    To establish a claim pursuant to Section 1983, Plaintiffs must demonstrate a violation of a right secured by the Constitution and the laws of the United States.

210.    Defendants, while acting under color of state law, exercised power it possessed by virtue of state law and made possible only because Defendants are clothed with the authority of state law. *West v Atkins*, 487 U.S. 42, 49 (1988).

211.    The State of Missouri provided a mantle of authority that enhanced the power of the harm-causing individual Defendants. *NCAA v. Tarkanian*, 488 U.S. 179, 192 (1988).

212.    Defendants acted with help of or in concert with state officials.

213.    Defendants' actions resulted from the State's exercise of coercive power.

214.    The State of Missouri provided Defendants significant encouragement, either overt or covert.

215.    School districts are delegated a public function by the State.

216.    Defendants are delegated a public function by the State of Missouri for the purpose of providing a free adequate public education.

217.    School officials can be held personally liable for a subordinate's violation of a

students constitutional right if:

     a.   defendant learned of facts or a pattern of inappropriate behavior pointing plainly toward the conclusion that the student was at serious risk;

     b.   defendant demonstrated deliberate indifference; and

     c.   such failure caused a constitutional injury to the student.

*Doe v. Taylor ISD*, 15 F. 3d 443 (5th Cir. 1994).

218.    Plaintiff S.K. notified Defendants on each and every incident herein incorporated.

219.    Defendants were notified of this pattern of behavior by its subordinates; yet failed to investigate and/or address and rectify the patterns.

220.    Defendants' failure to protect student's constitutional rights caused a constitutional injury that can be redressed by the IDEA's administrative procedures and remedies.

## COUNT IX

### Violation of 42 U.S.C. § 1983
### (Denial of Equal Protection Rights)

221.    Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their official individual capacities, under Section 1983 for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

222.    Under the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, "nor shall any State . . . deny to any person within its jurisdiction the equal protection of the laws.

223.    Class of One" claims: A Section 1983 plaintiff may bring an equal protection

claim, even if he or she does not allege membership in a protected class or group if he or she is intentionally treated differently than others similarly situated and there is no rational basis for the disparate treatment. *Olech v. Village of Willowbrook*, 528 U.S. 562 (2000).

224.    The Equal Protection Clause of the Fourteenth Amendment protects students from invidious discrimination.

225.    Racial segregation is unconstitutional within charter public schools.

226.    When public schools disproportionately discipline African American students, especially when seclusion methods are employed, the resulting effect is racial segregation.

227.    Seclusion based on disability is unconstitutional within charter public schools.

228.    Defendant's repeatedly used unlit, isolated rooms as a disciplinary method to seclude Plaintiff N.S. and other similarly situated students from regular classroom activities.

229.    Intentional discrimination on the basis of race is unconstitutional within charter public schools.

230.    Intentional discrimination on the basis of disability is unconstitutional within charter public schools.

231.    Defendant Board's policies prohibit discrimination, harassment, and retaliation.

232.    Defendant Board's policies prohibit bullying.

233.    Defendants violated the Equal Protection Clause of the Fourteenth Amendment, 42 U.S.C. § 1983 and its own policies, by intentionally discriminating against Plaintiff N.S. and other similarly situated students.

234.    Defendants willfully disregarded Plaintiff N.S.'s IEP; over-applied discipline, secluded, harassed, bullied, and retaliated against N.S. and other similarly situated students.

235.    Defendant Board's policies require immediate investigation of discrimination,

harassment, or retaliation.

236.     Defendants acted with a "nefarious discriminatory purpose" against Plaintiff N.S., when it acted intentionally and with deliberate indifference.

237.     Defendant Board's policies require immediate investigation of bullying.

238.     Plaintiff S.K., on multiple occasions, reported instances of racial slurs being used; racially motivated peer-to-peer altercations; and the intentional disregard for Plaintiffs' rights.

239.     Defendants inaction and failure to prevent and or address these reports willfully and deliberately caused Plaintiffs injuries.

## COUNT X

## Negligence

240.     Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their official individual capacities, as well as Defendants Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido individually and under Section 1983 for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

241.     Although generally schools do not have a duty to protect students, the exception is when the school created the danger and at all times mentioned herein and otherwise, Defendants and each of them, owed among other duties, a duty to not create dangers for its students.

242.     Additionally, educators owe students with disabilities a higher standard of care, by supervising disabled students in a manner specifically appropriate for the child's condition.

243.     Further, students with disabilities are owed a duty to:

      a.   adequately provide alternative methods of assessment;

      b.   arrange a learning environment that is as normal or "least restrictive" as possible;

and

    c.  participate in creating Individualized Educational Plans.

244.    Defendants breached these duties, in part, by engaging or condoning the engagement of;

    a.  illegal discrimination;

    b.  physical and verbal abuse;

    c.  harassment; and

    d.  invasion of privacy.

245.    Plaintiff N.S. had to be treated for mental health issues related to Defendants' illegal discrimination, harassment, and retaliation.

246.    Defendant's negligence further caused Plaintiff to experience depression, anxiety, stomach pain and embarrassment, amongst other documented medical conditions.

247.    Plaintiff N.S. was admitted to a hospital for treatment as a result of the discrimination, harassment, and retaliation.

248.    Plaintiff publicly urinated on himself as a result of Defendant's negligence.

249.    In creating danger to Plaintiff's S.K. and N.S., Defendants' breached duty caused Plaintiffs mental and emotional distress that manifested physically.

## COUNT XI

## Negligent Supervision

250.    Plaintiffs N.S. and S.K. sue Defendants Eastwood and Krewson, in their official and individual capacities, as well as Defendants Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido individually for cause, claim, damages, and hereby adopt and

incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

251.   Defendant Board owed Plaintiff a duty to supervise and retain competent special education teachers, employees, and other individuals present on school grounds.

252.   At all relevant times, Defendants worked as employees of Defendant Board.

253.   Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido jointly and individually engaged in or allowed the engagement of discrimination, harassment, bullying, and/or retaliation against Plaintiffs.

254.   Upon information and belief, prior to the discrimination, harassment, bullying, and retaliation of Plaintiffs N.S. and S.K., other students and parents at Kairos expressed concern regarding its employees' behaviors and lack of resources against similarly situated students.

255.   Defendant Board breached its duty to supervise its staff by failing to adequately supervise the workplace despite the fact that it knew, or should have known, that Defendants were discriminating, harassing, bullying, and retaliating against Plaintiff N.S. and other similarly situated students. This failure to supervise includes, but is not limited to, the failure to thoroughly investigate the concerns from parents regarding Defendants Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido's behavior, and the failure to supervise Defendants.

256.   Upon information and belief, parents expressed concern and raised issues to the administration about questionable practices and behaviors, but the board failed to take any meaningful investigation.

257.   As a direct and proximate result of the acts in conduct of Defendants,

Plaintiff suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort, and anxiety.

## COUNT XII

### Intentional Infliction of Emotional Distress

258.    Plaintiffs sue all Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

259.    Defendants engaged in outrageous conduct towards Plaintiff with the intention to cause, or with reckless disregard for the probability of causing, Plaintiff to suffer severe emotional distress, and with wanton and reckless disregard for the injurious result to Plaintiffs, as set forth hereinabove.

260.    The conduct set forth hereinabove was extreme and outrageous and an abuse of the authority and position of Defendants. The above described conduct was intended to cause severe emotional distress, or was done in conscious disregard of the probability of causing such distress. This conduct exceeded the inherent risk of being a student with disabilities in a public charter school and was not the sort of conduct normally expected from educators.

261.    As a direct and proximate result of Defendants discriminatory acts, Plaintiffs have suffered and continue to suffer from extreme anxiety, panic attacks, humiliation, embarrassment, emotional distress, discomfort, and the manifestation of physical symptoms, all in which will be shown according to proof at the time of trial.

262.    Corporate Defendants through its management of employees including but not limited to Defendants Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido, ratified and condoned Defendant's outrageous acts. Defendants were at all times acting in the

course and scope of their duties as employees of Corporate Defendants. Defendants are personally and individually liable for their acts. Corporate Defendants are vicariously liable for Defendants Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel, and Lucido.

263.    Defendants intentionally caused emotional distress when engaging in or condoning engagement in the deliberate humiliation; persistent course of bullying; verbal and written harassment and as such, said conduct alleged herein was the cause of severe emotional distress manifested physically through loss of sleep, inability to perform at school and hospitalization.

## COUNT XIII

### Negligent Infliction of Emotional Distress

264.    Plaintiffs sue all Defendants for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

265.    Defendants had a special duty of care to arrange a learning environment that is as normal or " least restrictive" as possible.

266.    Defendants should have realized that it and their conduct involved an unreasonable risk to the Plaintiff.

267.    Defendants breached their duties by failing to provide an adequate learning environment when engaging in or condoning engagement in the deliberate humiliation; persistent course of bullying; verbal and written harassment.

268.    Plaintiff was present at the scene of an injury producing, sudden event which manifested into physical injury. Plaintiffs experienced and continue to experience personality changes, withdrawal or isolation from other people, feelings of hopelessness, overwhelmed by

circumstances, being uncharacteristically angry, anxious, agitated or moody and neglecting self-care or engaging in risky behavior.

269.    Plaintiff was in the zone of danger and was placed in a reasonable fear of physical injury to his own person, emotional and mental trauma as well as mental distress.

## COUNT IVX

### Invasion of Privacy-Intrusion Upon Seclusion

270.    Plaintiffs sue Defendants Rohrer and Lucido for cause, claim, damages, and hereby adopt and incorporate by reference the allegations contained in all of the paragraphs 1-134 of this Complaint as though set forth fully herein.

271.    Defendants Rohrer and Lucido intentionally recorded video of Plaintiff N.S. and other children at Kairos.

272.    The videos depict N.S. allegedly misbehaving.

273.    Defendants' actions in recording and possessing these images violated N.S.'s reasonable expectations of privacy.

274.    Defendants' actions in recording and possessing the images would be highly invasive and offensive to a reasonable person.

275.    As a direct and proximate result of the acts and conduct of Defendants, Plaintiffs have suffered and continues to suffer severe emotional and mental distress, anguish, humiliation, embarrassment, fright, shock, pain, discomfort and anxiety.

276.    The conduct of Defendants was malicious, willful, and intentional.

### Prayer for Relief

WHEREFORE, Plaintiff prays for the following relief:

1. On the First Count for Relief for Intentional Discrimination Based on Race against

Corporate Defendants:

      a.  Non-economic damages in an amount to exceed $75,000;

      b.  Economic damages in an amount to be determined by the jury;

      c.  Punitive damages in an amount to exceed $75,000 against Corporate Defendants;

and

      d.  Costs and disbursements incurred herein.

2.  On the Second Count for Relief for Discrimination Based on Disability against Corporate

Defendants:

      a.  Non-economic damages in an amount to exceed $75,000;

      b.  Economic damages in an amount to be determined by the jury;

      c.  Punitive damages in an amount to exceed $75,000 against Corporate Defendants;

and

      d.  Costs and disbursements incurred herein.

3.  On the Third Count for Relief for Failure to Provide Equal Opportunity against Corporate

Defendants:

      a.  Non-economic damages in an amount to exceed $75,000;

      b.  Economic damages in an amount to be determined by the jury;

      c.  Punitive damages in an amount to exceed $75,000 against Corporate Defendants;

and

      d.  Costs and disbursements incurred herein.

4.  On the Fourth Count for Relief for Failure to Provide Special Education against

Defendants Eastwood and Krewson:

      a.  Non-economic damages in an amount to exceed $75,000;

    b.   Economic damages in an amount to be determined by the jury;

    c.   Punitive damages in an amount to exceed $75,000 against Eastwood and

Krewson; and

    d.   Costs and disbursements incurred herein.

5.  On the Fifth Count for Failure to Use Least Restrictive Means against Corporate

Defendants:

    a.   Non-economic damages in an amount to exceed $75,000;

    b.   Economic damages in an amount to be determined by the jury;

    c.   Punitive damages in an amount to exceed $75,000 against Corporate Defendants;

and

    d.   Costs and disbursements incurred herein.

6.  On the Sixth Count for Relief for Failure to Train and Supervise against Defendants

Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido:

    a.   Non-economic damages in an amount to exceed $75,000;

    b.   Economic damages in an amount to be determined by the jury;

    c.   Punitive damages in an amount to exceed $75,000 against Eastwood, Krewson,

Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido; and

    d.   Costs and disbursements incurred herein.

7.  On the Seventh Count for Relief for Unconstitutional Practices against Defendants

Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido:

    a.   Non-economic damages in an amount to exceed $75,000;

    b.   Economic damages in an amount to be determined by the jury;

    c.   Punitive damages in an amount to exceed $75,000 against Eastwood, Krewson,

Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido; and

  d. Costs and disbursements incurred herein.

8. On the Eighth Count for Relief for Unconstitutional Acts against Defendants Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido:

  a. Non-economic damages in an amount to exceed $75,000;

  b. Economic damages in an amount to be determined by the jury;

  c. Punitive damages in an amount to exceed $75,000 against Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido; and

  d. Costs and disbursements incurred herein.

9. On the Ninth Count for Relief for Denial of Equal Protection Based on Race against Defendants Eastwood and Krewson:

  a. Non-economic damages in an amount to exceed $75,000;

  b. Economic damages in an amount to be determined by the jury;

  c. Punitive damages in an amount to exceed $75,000 against Eastwood and Krewson; and

  d. Costs and disbursements incurred herein.

10. On the Tenth Count for Relief for Negligence against Defendants Eastwood and Krewson:

  a. Non-economic damages in an amount to exceed $75,000;

  b. Economic damages in an amount to be determined by the jury;

  c. Punitive damages in an amount to exceed $75,000 against Eastwood and Krewson; and

  d. Costs and disbursements incurred herein.

11. On the Eleventh Count for Relief for Negligent Supervision against Defendant Eastwood and Krewson:

     a. Non-economic damages in an amount to exceed $75,000;

     b. Economic damages in an amount to be determined by the jury;

     c. Punitive damages in an amount to exceed $75,000 against Eastwood and Krewson; and

     d. Costs and disbursements incurred herein.

12. On the Twelfth Count for Relief for Intentional Infliction of Emotional Distress against Corporate Defendants and Defendants Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido:

     a. Non-economic damages in an amount to exceed $75,000;

     b. Economic damages in an amount to be determined by the jury;

     c. Punitive damages in an amount to exceed $75,000 against Corporate Defendants and Defendants Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido; and

     d. Costs and disbursements incurred herein.

13. On the Thirteenth Count for Relief for Negligent Infliction of Emotional Distress against Defendants Corporate Defendants and Defendants Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido:

     a. Non-economic damages in an amount to exceed $75,000;

     b. Economic damages in an amount to be determined by the jury;

     c. Punitive damages in an amount to exceed $75,000 against Corporate Defendants

and Defendants Eastwood, Krewson, Larimore, Does 1-3, Cisneros, Rohrer, Schiffries, Patel and Lucido; and

    d.   Costs and disbursements incurred herein.

14. On the Fourteenth Count for Relief for Invasion of Privacy against Defendants Larimore and Rohrer:

    a.   Non-economic damages in an amount to exceed $75,000;

    b.   Economic damages in an amount to be determined by the jury;

    c.   Punitive damages in an amount to exceed $75,000 against Larimore and Rohrer; and

    d.   Costs and disbursements incurred herein.

15. For all other relief this court deems as just and equitable.

16. For an Award of Plaintiffs' reasonable Attorney fees.

## JURY TRIAL DEMANDED

Plaintiffs request a jury trial for their claims against Defendants in this matter.

Respectfully Submitted,

/s/ LaQuetta S. Henry
LaQuetta S. Henry 67865(MO)
Attorney for Plaintiffs
Ruston Law Firm
258 Pear Tree Rd
Strong, AR 71765
P: (314) 477-1192
drmsesq@gmail.com

/s/  Philip H. Dennis
Philip H. Dennis 51557(MO)
Dennis Law Firm

222 S. Central Ave.,
Ste. 1120
Clayton, Missouri 63105
P: (314) 371-7300
dennislaw1959@hotmail.com

CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, the foregoing was mailed by United States

Postal Service to the following non-participants in Electronic Case Filing:

MISSOURI CHARTER PUBLIC SCHOOL ASSN.
Serve: c/o Ms. Kirsten Lipari-Braman
1306 Papin St.
St. Louis, MO 63103

Kairos BOARD OF EDUCATION
Serve: c/o Mr. Hugh Eastwood
2315 Miami St.
St. Louis, MO 63118

Kairos: ST. LOUIS
Serve: c/o Mr. Gavin Schiffries
2315 Miami St.
St. Louis, MO 63118

Jack Krewson, Julia Larimore, Does 1-3, Scott Cisneros, Lee Rohrer,
Gavin Schiffries, Nilesh Patel, and Kat Lucido,
Serve: c/o Mr. Gavin Schiffries
2315 Miami St.
St. Louis, MO 63118.

/s/ LaQuetta S. Henry
LaQuetta S. Henry 67865(MO)

Attorney for Plaintiffs
Ruston Law Firm
258 Pear Tree Rd
Strong, AR 71765
P: (314) 477-1192
drmsesq@gmail.com